This is number 13, 1114 NREA Enhanced Security Research. This is number 13, 1114 NREA Enhanced Security Research. This is number 13, 1114 NREA Enhanced Security Research. Let me proceed. It was unfair for the Patent Office to reject ESR's claims by using a deficient declaration to turn a non-public incomplete document into prior art. If we were talking about a district court action, then the party offering the document has to show that the document is admissible. Then you move to the step of looking to see whether it would make the claims unpatentable or not. In this particular case, the requester had access to the declarant and the documents. In fact, the declarant's company created this document, whatever it is. ESR had access to neither and no discovery, because that's how reexaminations work. This is, of course, different than the procedures that you'll have in the new Interparties Review, where there is discovery. You'll have an opportunity to ask for discovery. You'll have an opportunity for a cross-examination. What that means is, in this particular situation, there should be a duty for the Patent Office to look at things and make sure that, indeed, the declaration makes the document prior art. Did the examiner have some means to make a request to whoever submitted the NetStalker manual, a request of the form? Are you aware of a complete version? Do you have a complete version? I'm assuming from what you just said that you had no recourse. You couldn't sue in district court. You didn't have any mechanism for trying to find out if there was a complete version. Did the examiner have any recourse? Before the experti reexamination was instituted, the Patent Office could have said, this is not sufficient, and explained the reasons why. And then a new petition could have been, or a request could have been filed that didn't have the defects that you see in this declaration and in this document. But in this manual, the incomplete manual, it's clearly incomplete. There's no question about that. It's missing pages. In fact, it's missing pages such as the pages... I'm sorry. So the only thing you've just identified is that they could have said, we deny the request. Is there a regulation or some other authority like the one that applies in a normal ex parte application for a patent to make informational requests to the applicant that would have allowed the examiner to make an informational request without saying whether the current submission was sufficient or not? In an ex parte reexamination, once the requester makes their submission, unless the patentee provides a response, the requester is no longer involved. So there is no mechanism to my knowledge. What about our decision in STAR? I thought we said that examiners could request whatever information they thought was necessary. They can request information from a patentee or an applicant. But we're talking about an ex parte requester here. We're talking about a petitioner. And that's different. What if they can't request information from a third party? There's no provision for doing that. I'm unaware of a reexam where that's ever been done, and there's no rule that allows that to be done. Let's address the opposite question, though. Is there any rule that says it can't be done, or any case law from us that says it can't be done? I'm unaware of anything that says it can't be done. There's no procedure for it. I don't know how it would be done, how it would be directed. I mean, the idea here, I think, should be is that the patent office looks at it and says, okay, I'm not going to start this proceeding until you've given me a sufficient set of documents that I can go forward with my examination. And then once that's done, then it should switch over. But my point is, when you look at this declaration and you look at these documents, they are not sufficient for the patent office to have done that, because there's nothing as the patentee we can do once this starts. Well, wait, wait. That's not quite true. You could informally request a complete copy, correct? We tried to get a copy and couldn't. Is that in the record? Yes. Where? It's in footnote, I think it's either four or seven. Of what? Of our brief. You're talking about in the record itself. No, there's nothing in there. You put nothing in the record about having requested this and being turned down? There is nothing in the record to my knowledge, that's right. What I'm saying is, is that we tried to get a copy, and I'm making that as a personal representation. We tried to get a copy and it's simply not available. Well, but maybe you should have made a record of that. Okay. Can I ask you on the merits of the incompleteness? I appreciate that in general it could be that a partial version of a reference could teach something that plausibly would be contradicted, altered materially by the complete version. I'm having a very hard time understanding how in this situation that's even plausible. The reference says one kind of alarm is a shun, and there are severity levels, and even apart from the severity levels, there is something you might call, though it didn't call a severity level, namely a certain minimum number of repeated attacks, which might in fact be a kind of weighing. What's the plausible scenario under which something else in this document, in the missing pieces, would have contradicted that? Well, in terms of how they might have contradicted, they could have disparaged the use of a user-defined security level to trigger an alarm, for instance. I mean, think about the fact that in Chapter 5, it's 5-5, the page that's used. 5-4 is not there. 5-6 is not there. Half of the pages are missing. In Chapter 7, 70% of the pages are missing. You're forcing us to prove a negative without anything there. Moreover, while it's not in the record, if you look at this document, there are numerous pages where there are dates on it. For all we know, the missing pages could have had dates that showed that this document was created at a later time that were just conveniently taken out. It wouldn't have made the declaration wrong. That seems sort of speculative. I guess what Judge Toronto is asking is what's likely to have been in there? And it also seems to me unlikely that they would disparage what they said in the first part of the manual. Not disparaging it in the sense of disparaging it. They would simply say, don't do something this way. So they could say, here's how it's done. And that's what the patent officers were going with. They say, do this. But what the other part could say is, don't do this. This is a manual that's saying, here's what our product does. It's not like a piece of prior art where there's a background discussion of various other people have done these things and somehow you don't have column 3 and 4. And then column 3 and 4 says, that's a very bad idea. This is a manual saying, here's what our product does. It seems, I guess, worse than speculative to expect that other pages are going to say, but don't do one of the things we've just designed into our system. If you've ever read a manual for a car, it will say, don't do certain things because it may kill you. Usually right near where it defines the thing. Yes, and we're talking about page 5.6 and 5.4 are missing where 5.5 is. And the other point that I want to make here is, if you accept this particular document, what you're doing is saying that anybody can provide a declaration that says, I had this document in my files back in this particular time. And if someone had asked me for it, I would have provided it. It seems to me what you're arguing for is a per se rule that if part of the document is missing, it can't be used as prior art. No, I don't think I'm saying that. I'm saying that it has to be at least explained why some of it's missing. There's nothing here. This document was available in May 1996. It doesn't say it was publicly available. It doesn't say that we sent it to anyone. In fact, if you look at it, the fact that it says it was installed, et cetera, is in a paragraph that appears after the November 1996 date when it said we put this on the website. It doesn't say that they were doing it early. And it doesn't say the document was a final version. And it doesn't say that there was anything more than the pages that appear, correct? It doesn't, but to the point of it being a manual. I mean, that shows that it's an incomplete document. Were they really sending out an incomplete document? If they were, then there's a lot of pages in the index that aren't there. There are pages, look at 7-4, that's clearly not page 7-4. It's just a draft of something. That suggests that it wasn't a final document. What are you saying? I guess I'm not really following. Are you saying that the PTO had an obligation to insist that they provide a complete copy or provide an explanation as to why it's unavailable? Or are you saying they couldn't proceed without a complete copy? Oh, I think it would have been perfectly legitimate for them to go back and ask for some of these things and see if they're there. Suppose they're not there. Suppose the response is, unfortunately, the complete manuals have been discarded. All we have is this copy. Could they use the copy under those circumstances? It would depend on what the declaration said. We have both issues here. With respect to that declaration, it would depend upon it. In a case such as this where very critical pages from the index, you can tell that these are important pages, I would say no, they shouldn't be able to use it unless they can show that it's there to help. Why are these critical pages? That's the question getting back to the dialogue we were having earlier. Because Chapter 7 talks about managing and analyzing log files. That's what we're talking about here. We're talking about what do you do with this information you get in from the attacks on the server, if you will. So you're analyzing this information. Those pages are missing there, and we have no idea what it says. And Mr. Zoltik will explain how this, you know, why it makes a difference as to how that analysis is done. That's part of the patentability issue. We have no way of knowing this. The patent office is looking at certain pages and saying, well, these support us, and it's your job to explain to us why we can't use this document. And I just think that that burden is on the wrong party. Your argument really is a combination of the missing pages in the document and the type of those missing pages, as well as the failure of the declaration to explain the absence of those pages or the status of why those pages were absent when it was presented. I can't say it better than that, Your Honor. So I will stop there, unless you've got other questions. Okay, I think you've got a friend you want to participate. Thank you. May it please the Court, I'm going to address the obviousness issue. I guess I should start with maybe responding to the question regarding the severity level and the missing pages. So page 55, which we were discussing, talked about severity level, talked about threshold and count. The pages, the NetStalker manual does not disclose or suggest using the severity level and then blocking communications, which is what the claims are directed to. No, well, I think it does do that. I thought it specifically did that. What it doesn't do, I thought you were saying, is it doesn't calibrate the response to the severity level. In other words, whether the response is blocking or shunning, it doesn't tell you whether to do that for 10 minutes or an hour depending on the severity of the attack. The severity level, which is described in the NetStalker manual, simply issues a report, sends an email to an administrator. That's not true. It says, if you look at page 302, it says, in addition, you may want NetStalker to take an automatic action, a response. It doesn't just produce an alarm. 302? Yeah, and at the end of the first paragraph there. In addition, you may want NetStalker to take an automatic action, a response. That is, in addition to the alarm. It isn't just produce an alarm. That's correct, and that is an argument that we made that simply suggesting or disclosing that essentially would require a programmer to reprogram the NetStalker software to, based on the severity level in this case with respect to our claim, the weight that's assigned to the security breach, then go ahead and block communications. But that seems to suggest doing what you're doing, no? It simply says that, in addition, you may want NetStalker to take an automatic action. It doesn't talk about how you would do that and what the action would be. Isn't the point that severity in the patent is a different concept than severity in the NetStalker manual? I mean, isn't that your point, that there's two different ways to contemplate severity, whether it's number of things versus severity in the sense of each individual thing having a greater risk? The claimed weight has to have a causal relationship with the blocking response. That's what the claim says. You detect patterns of activity that show a security breach, you assign a weight to that breach, and then you block depending on the assigned weight. So I thought what you were saying is that NetStalker does allow you to achieve a response to a defined security threat. But what it doesn't do is it doesn't tell you to modulate the response depending on the severity of the attack. That, it seems to me, is the argument you're making. That's exactly right, and it certainly doesn't do that. And the distinction that's made in NetStalker between the severity level on the one hand, which issues a report or a response, doesn't say what it is, and then the threshold, which is the count that does block, actually shows, it makes the argument. I mean, if it disclosed severity on the one hand and threshold on the other and doesn't say in response to the severity level, you can block, that's what the patent claim covers that's not disclosed or suggested by the NetStalker manual. And that also goes back to the missing pages, which are right around those teachings. Okay, do we have any further questions here, Annette? Because we're out of time. Okay. We'll give you two minutes for rebuttal. Okay, thank you. Annette? Ms. Schoenfeld? May it please the Court? First, I just wanted to say that with the standard for diligence, no diligence in the waiver of dependent claims, which was addressed in the blue brief, was not addressed in the oral argument. So unless you have any questions, we won't address those issues. Okay, what about the missing pages? I think Judge Tronto made a very good point. This is a manual. You can fill in by the context of the document what would be there. I mean, if you look at the document, it's explaining the procedures. It's talking about the procedures. And as far as the teaching away point, I mean, if it did disparage, as opposing counsel suggested, that would be a disclosure that you would tie those things together. So that would even act as an anticipation of the claim. So if the examiner wanted a copy of the complete manual, could he request it from the third party? I know of no law that speaks to it. The only thing is that with ex parte, sometimes it could be submitted anonymously. This one was not. But in general, there is a possibility that it could not be received from a third party if it was anonymous. But you're not answering my question. My question is, could the examiner, in this case, request it from the third party? I don't know of anything that would prohibit the examiner from requesting it. We have a situation where one page is submitted. The pages on either side are absent. And yet the declaration refers to this as a manual in its totality. How is it that the patent holder should be expected to prove the negative, that those pages, which are directly tied to the ones that are disclosed, wouldn't somehow teach away or contain additional information that could raise some questions that would be valid with respect to a consideration of whether or not a duly issued patent should stand? One of ordinary skill looking at the manual would find the context to be complete. Really, if you just look at A236, that teaching alone teaches… 326. Oh, 2, sorry, what is it? Sorry, let me find that again. 326, that's correct. Sorry about that. I mean that teaching alone teaches that you can shun, that you can block from a source, that you can send a severity level, which is all that is in their claim. I mean their claim is basic. You're just categorizing a breach and you're blocking based on that breach. But I thought you conceded that there was a difference and the difference is that here in NetStalker, it doesn't tell you to lengthen the period of the shun depending on the severity of the attack. There is a difference which makes it… Am I correct about that? I don't think the claims require the lengthening of the shun. The claims only require that it shuns at all. Can I just ask you on that? Before the board or the examiner, did they make essentially a claim construction argument that this new weighting provision required modulation as opposed to on or off? No, there's not a claim construction issue here and I don't believe there was a claim construction issue at the board either. You say at the top of page 20 of your brief that neither lesson specifically teaches then using the severity as the basis for response, but the severity of the response depends on the severity of the breach. Doing so would have been obvious to one ordinary skill. Right. So presumably you said that because that was relevant under the claims, right? There's a missing element here. Right. There is a tiny step of going from just counting the number of breaches to blocking based on the severity of the breach. So if there were 20 breaches, you might shun for an hour. Or if there were 40 breaches, you might shun for two hours, right? That's the idea. No? I read the claims as shunning or making the decision to shun based on the severity of the attack. So if you have an attack which is... What's wrong with what I said? There's nothing wrong with what you said. I mean, the claims are not specific. I think that the claims are broad to encompass a number of possibilities. But given the fact that there is a distinction and a missing element in the Netstalker Manual, how are we to assume that the other pages don't actually teach further away from filling in that gap with exactly what it is you want us to assume someone would fill the gap with? I would go back to Judge Toronto's question in that in this particular case, if we look at the manual, what would the possible teaching away be? There is no teaching away that would make sense that wouldn't disclose the invention. Can I put this factually in context of Mr. Smaha, who submits the declaration, which admittedly, there's big gaps in that declaration. If you were to rewrite it, you'd ask him to say about 15 more things than he said. He was being paid by the requester that instituted this whole re-exam. He was the one who had access to this manual and could tell us exactly what the missing pages said or supply the missing pages. We've got the requester and the paid expert not filling in this missing information. Wouldn't it be more appropriate for the PTO to insist that they fill in the gaps rather than to tell the individual who, based on our case law, was not allowed to subpoena the document, couldn't do anything formally to get the document, and whether or not they made a formal record of their ability to get it. They've represented as officers of the court that they did try to get it. Given all that context, why are we supposed to bend over backwards to say we'll just assume that this is all no harm, no foul? I don't think we're assuming it's no harm, no foul. The PTO is looking at what's submitted and they are making a rejection based on the document submitted. Often people, if there's an article, you don't have to submit the entire magazine. There's no rule that you have to submit every page of every document that you submit. With regards to public accessibility, the bar is that on May 1996, when the document was stated, was that document available? The PTO was relying on the declaration of someone who would know that information. But the only thing you said was available was this incomplete, unfinished document. He didn't say the finished manual was available as of that date. He didn't say that it had ever been requested by anyone as of that date. Even the reference to having made minor sales of this net stalker doesn't even say what year that occurred. You're saying they're relying on the declaration, but the declaration doesn't say that. It says this document, this incomplete, unfinished document, existed in May. That's all it says. Sure. It says it was available. It says it was available, and it says that members of the public would be able to get it. I think putting those two statements together does equate with public availability. It also relies on the advertisements in 1995 that we know that this product was being advertised. Do we know what product was being advertised? That's, again, a gap. There's nothing in the advertisements that were referenced or in the declaration that says that it was this product subject to this manual that was being advertised. We know that people were aware of the net stalker product, and if they called on May 1996, the company, and wanted to get a manual, we have the manual dated May 1996, which the declarant said would be available to the public. I think that's substantial evidence. Anything further? Okay. Thank you, Ms. Schoenfeld. Thank you. Mr. Harding, you have two minutes. Your Honor, I only want to make one point, and that is just to remind the court that the board erred by failing to separately address the Dependent Claims 9 and 15. We haven't talked about them today, but I just want to make sure that that gets in the program. Can I just ask this question about how to interpret your weighting claim? I guess I... Was there an argument that you made to the board that your new weighting language requires modulated responses depending on the weight and doesn't cover a situation, a system in which if the weight is above this, you block, and if the weight is below this, you don't block? I guess until it came up here, I had not understood that there was a dispute about that. Actually, Mr. Zolta could answer that better than me, but my understanding is yes, we did argue that. If you give me a moment, I can give you a page in the record. Okay. I guess while you're looking, the reason I ask is it seemed to me your whole brief talked about using the weight to trigger an alarm, and I don't remember anything in your brief that says using the weight to trigger one alarm rather than a different alarm or using the weight to trigger one form of block as opposed to another form of block, that the claim encompasses constantly monitoring the firewall and deciding based on the weight to take what action to take, but that doesn't require more than two actions, none or block. It's addressed, Your Honor, on pages 42 through 44 of our main brief. I think Judge Toronto was asking for a reference where you argued before the PTL. Oh, before, well, the, the, references to the record are embedded within that portion of the brief. So, for instance, if you look at the top of 43, it says the use of the severity rating in the NetStalker Manual relates to reporting an alarm, and it goes to 325, and then it also says, on page 44, about the relationship between the severity rating and the blocking. Brett, I guess I took all of that to be, you were distinguishing, sensibly enough, between reporting and blocking or what they call shunning. There's reports providing information, somebody can do something, and then there's taking an action, shunning or not shunning. And I didn't see anything in here about different controls of the firewall being necessary for your claim. It's the, assigning a weight on page 44. It talks about, for assigning a weight. If you look at the claim in the, Or put it differently, what is the claim language that requires modulation to satisfy the claim? It talks about, in element Roman numeral three, it says assign a weight to the attempted security breach. And then it says in, well, NetStalker does that. And then if you look at claim 12, for instance, it talks about, depending upon the weighted, it said the last recitation of the claim, it says generally controlling it and blocking, depending upon the weighted classification assigned to the attempted security breach. But that also doesn't suggest modulating the response. It doesn't seem to me clearly to be talking about changing the block from an hour to two hours,  It does not have that language in the claim. That's correct. Now, as I understand it, the board specifically found that the alarms were triggered under NetStalker based on the number of events. And so the board said, therefore an alarm is triggered and you block communications based on the alarm. But as I understand it, the board specifically found that the gap was that there was no teaching that you blocked communications based on the severity of a particular activity. Is that right? And that's what the board found missing from NetStalker? Right, right. Okay. Which is found in the other reference, right? It's not found in the other reference. No, I don't think so. I don't remember. But the whole point of the other reference was complex methods for determining the severity of the attack. I don't think that's true, Your Honor. Yeah, I think that's exactly what the board said about bipin, whether it really discloses it or not is a different question, but that's what the board said. At least it added, the board said that it added further support for this notion. As Judge Dyke just said. Well, LIPIN does not disclose and wouldn't have suggested blocking communications. No, you have to get that from NetStalker. Well, but then it doesn't disclose the rules that assign various strengths are used to identify security breaches. What the rules are used to identify is an anomalous activity, and then it has to be screened by a security officer who looks at it and says, oh, we need to do something. No, NetStalker specifically talks about on page 302 of automatically doing it. It doesn't require the intervention of a security officer. Well, LIPIN doesn't disclose weighted rules that are used to identify misuse or block communications, and in fact teaches that a person has to determine whether a transaction indicative of a security breach takes place. Right, you have to get the other from NetStalker. Any other questions? No. Okay. Thank you, Mr. Huntington. The case is submitted. Thank you all for coming.